# EXHIBIT 1

**EXHIBIT 1 TO NOTICE OF REMOVAL IDENTIFYING AND ATTACHING
DOCUMENTS FROM THE COURT FILE OF THE CIRCUIT COURT OF THE
SEVENTEENTH JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA**

| Exhibit | Documents in State Court File |
|---|---|
| 1(A) | Electronic Copy of Docket, Jane Patterson, et al. v. Merck & Co., Inc., et al., 2017 CACE17019806 |
| 1(B) | Plaintiffs' Civil Cover Sheet, filed on or about October 27, 2017 |
| 1(C) | Plaintiffs' Complaint, filed on or about October 27, 2017 |
| 1(D) | Request Summons to Merck & Co., Inc., filed on or about October 30, 2017 |
| 1(E) | Request Summons to McKesson Corp., filed on or about October 30, 2017 |
| 1(F) | Request Summons to Merck Sharp & Dohme Corp., filed on or about October 30, 2017 |
| 1(G) | Returned Summons Served – Merck & Co., Inc., filed on or about November 10, 2017 |
| 1(H) | Returned Summons Served – McKesson Corp., filed on or about November 10, 2017 |
| 1(I) | Return Summons Served – Merck Sharp & Dohme Corp., filed on or about November 10, 2017 |

# EXHIBIT 1(A)







## Case Detail - Public

🖶 Print

**Jane Patterson , et al          Plaintiff  vs.  Merck And Co Inc, et al          Defendant**

**Broward County Case Number:** CACE17019806

**State Reporting Number:** 062017CA019806AXXXCE

**Court Type:** Civil Division - Circuit Court

**Case Type:** Products Liability

**Incident Date:** N/A

**Filing Date:** 10/27/2017

**Court Location:** Central Courthouse

**Case Status:** Pending

**Magistrate Id / Name:** N/A

**Judge ID / Name:** 03 Powell, Mily R.

| − | Party(ies) | | | Total: 11 |
| --- | --- | --- | --- | --- |
| Party Type | Party Name | ❓ Address | ❓ Attorneys / Address ☀ Denotes Lead Attorney | |

^

| Party Type | Party Name | ❓ Address | ❓ Attorneys / Address ♚ Denotes Lead Attorney |
|---|---|---|---|
| Plaintiff | **Alford, Donna** | | ♚ DeGisi, Carmen Anthony, ESQ. Retained Bar ID: 97303 Marc J. Bern & Partners LLP 101 W Elm St Ste 215 Conshohocken, PA 19428-2075 |
| Plaintiff | **Bencivenga , Angelo** | | ♚ DeGisi, Carmen Anthony, ESQ. Retained Bar ID: 97303 Marc J. Bern & Partners LLP 101 W Elm St Ste 215 Conshohocken, PA 19428-2075 |
| Plaintiff | **Blanchard , Maryfaith** | | ♚ DeGisi, Carmen Anthony, ESQ. Retained Bar ID: 97303 Marc J. Bern & Partners LLP 101 W Elm St Ste 215 Conshohocken, PA 19428-2075 |
| Plaintiff | **Green, Doris** | | ♚ DeGisi, Carmen Anthony, ESQ. Retained Bar ID: 97303 Marc J. Bern & Partners LLP 101 W Elm St Ste 215 Conshohocken, PA 19428-2075 |

∧

| Party Type | Party Name | ❓ Address | ❓ Attorneys / Address ♔ Denotes Lead Attorney |
|---|---|---|---|
| Plaintiff | **Kinard, Richard** | | ♔ DeGisi, Carmen Anthony, ESQ. Retained Bar ID: 97303 Marc J. Bern & Partners LLP 101 W Elm St Ste 215 Conshohocken, PA 19428-2075 |
| Plaintiff | **Malberg, David** | | ♔ DeGisi, Carmen Anthony, ESQ. Retained Bar ID: 97303 Marc J. Bern & Partners LLP 101 W Elm St Ste 215 Conshohocken, PA 19428-2075 |
| Plaintiff | **Patterson , Jane** | | ♔ DeGisi, Carmen Anthony, ESQ. Retained Bar ID: 97303 Marc J. Bern & Partners LLP 101 W Elm St Ste 215 Conshohocken, PA 19428-2075 |
| Plaintiff | **Pilliteri, Joyce** | | ♔ DeGisi, Carmen Anthony, ESQ. Retained Bar ID: 97303 Marc J. Bern & Partners LLP 101 W Elm St Ste 215 Conshohocken, PA 19428-2075 |
| Defendant | **McKesson Corporation** | | |
| Defendant | **Merck And Co Inc** | | |

| Party Type | Party Name | ❷ Address | ❷ Attorneys / Address ✵ Denotes Lead Attorney |
|---|---|---|---|
| Defendant | **Merck Sharp And Dohme Corporation** | | |

## − Disposition(s)                                                            Total: 0

**There is no Disposition information available for this case.**

## − Event(s) & Document(s)                                                    Total: 13

| Date ⬍ | Description | Additional Text | View | Pages ⬍ |
|---|---|---|---|---|
| 11/10/2017 | **Affidavit of Service** | 11/01/17 Party: *Defendant* Merck Sharp And Dohme Corporation | 📄 | 2 |
| 11/10/2017 | **Affidavit of Service** | 2nd day of November, 2017 Party: *Defendant* Merck And Co Inc | 📄 | 2 |
| 11/10/2017 | **Affidavit of Service** | 2nd day of November, 2017 Party: *Defendant* McKesson Corporation | 📄 | 2 |
| 10/31/2017 | **No Summons Issued** | | | |
| 10/31/2017 | **Summons Issued Fee** | Payor: CARMEN A DEGISI ; Userid: CTS-fg/t ; Receipt: 20171FA1A149548; ;  Amount: $10.00 | | |

| Date ⬍ | Description | Additional Text | View | Pages ⬍ |
|--------|-------------|-----------------|------|---------|
| 10/31/2017 | **Summons Issued Fee** | Payor: CARMEN A DEGISI ; Userid: CTS-fg/t ; Receipt: 20171FA1A149548; ;<br><br>Amount: $10.00 | | |
| 10/31/2017 | **Summons Issued Fee** | Payor: CARMEN A DEGISI ; Userid: CTS-fg/t ; Receipt: 20171FA1A149548; ;<br><br>Amount: $10.00 | | |
| 10/30/2017 | **Filing Fee** | Payor: CARMEN A DEGISI ; Userid: CTS-fg/t ; Receipt: 20171FA1A148327; ;<br><br>Amount: $401.00 | | |
| 10/30/2017 | **eSummons Issuance** | McKESSON CORP | 📄 | 1 |
| 10/30/2017 | **eSummons Issuance** | MERCK AND CO., INC | 📄 | 1 |
| 10/30/2017 | **eSummons Issuance** | MERCK SHARPE AND DOHME CORP | 📄 | 1 |
| 10/27/2017 | **Civil Cover Sheet** | | 📄 | 2 |
| 10/27/2017 | **Complaint (eFiled)** | | 📄 | 45 |

---

– Hearing(s)                                                    Total: 0

**There is no Hearing information available for this case.**                              ⌃

**–**  Related Case(s)

Total: 0

**There is no related case information available for this case.**

# Brenda D. Forman

## Clerk of Court

Broward County
17th Judicial Circuit

MORE ABOUT THE CLERK (/ABOUTUS/ABOUTTHEOFFICE#ABOUTTHECLERK)                    ›

# Connect with Us

COURTHOUSE LOCATIONS (/ABOUTUS/HOURSANDLOCATIONS#COURTHOUSELOCATIONS)          ›

CONTACT US (/ABOUTUS/ABOUTTHEOFFICE#CONTACTUS)                                  ›

DISCLAIMER AGREEMENT (/GENERALINFORMATION/MISCELLANEOUS#DISCLAIMERAGREEMENT)    ›

CLERK DIRECTORY (/ABOUTUS/HOURSANDLOCATIONS#CLERKDIRECTORY)                     ›

# Accessibility & Support

ADA NOTICE (/GENERALINFORMATION/MISCELLANEOUS#ADA)                             ♿

PRINT                                                                          🖶

FREQUENTLY ASKED QUESTIONS
(HTTPS://WWW.BROWARDCLERK.ORG//WEB2/CASESEARCH/FREQUENTQUESTIONS/)

GLOSSARY OF TERMS (HTTPS://WWW.BROWARDCLERK.ORG//WEB2/CASESEARCH/GLOSSARY/)    »

# Main Courthouse Location

⌃

201 SE 6th Street

Fort Lauderdale
Florida, US 33301
Phone: (954) 831-6565

---

REQUEST PUBLIC RECORDS

(/GENERALINFORMATION/MISCELLANEOUS#PUBLICRECORDSCUSTODIAN) › *PURSUANT TO 119.12 (2), F.S.*

Under Florida law, email addresses are public records. If you do not want your email address released in response to a public records request, do not send electronic mail to this entity.

Instead, contact this office by phone or in writing.

© 2017 - All rights reserved

# EXHIBIT 1(B)

# FORM 1.997. CIVIL COVER SHEET

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner for the use of the Clerk of Court for the purpose of reporting judicial workload data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

## I. CASE STYLE

IN THE CIRCUIT COURT OF THE <u>SEVENTEENTH</u> JUDICIAL CIRCUIT,
IN AND FOR <u>BROWARD</u> COUNTY, FLORIDA

Case No.:_____
Judge: _____

<u>JANE PATTERSON, JOYCE PILLITTERI, DORIS GREEN, DAVID MALBERG, MARYFAITH BLANCHARD, ANGELO BENCIVENGA, DONNA ALFORD, RICHARD KINARD</u>
Plaintiff
vs.
<u>MERCK & CO., INC., Merck Sharp & Dohme Corp., McKesson Corporation</u>
Defendant

## II. TYPE OF CASE

- ☐ Condominium
- ☐ Contracts and indebtedness
- ☐ Eminent domain
- ☐ Auto negligence
- ☐ Negligence – other
  - ☐ Business governance
  - ☐ Business torts
  - ☐ Environmental/Toxic tort
  - ☐ Third party indemnification
  - ☐ Construction defect
  - ☐ Mass tort
  - ☐ Negligent security
  - ☐ Nursing home negligence
  - ☐ Premises liability – commercial
  - ☐ Premises liability – residential
- ☒ Products liability
- ☐ Real Property/Mortgage foreclosure
  - ☐ Commercial foreclosure $0 - $50,000
  - ☐ Commercial foreclosure $50,001 - $249,999
  - ☐ Commercial foreclosure $250,000 or more
  - ☐ Homestead residential foreclosure $0 – 50,000
  - ☐ Homestead residential foreclosure $50,001 - $249,999
  - ☐ Homestead residential foreclosure $250,000 or more
  - ☐ Non-homestead residential foreclosure $0 - $50,000

- ☐ Non-homestead residential foreclosure $50,001 - $249,999
- ☐ Non-homestead residential foreclosure $250,000 or more
- ☐ Other real property actions $0 - $50,000
- ☐ Other real property actions $50,001 - $249,999
- ☐ Other real property actions $250,000 or more
- ☐ Professional malpractice
  - ☐ Malpractice – business
  - ☐ Malpractice – medical
  - ☐ Malpractice – other professional
- ☐ Other
  - ☐ Antitrust/Trade Regulation
  - ☐ Business Transaction
  - ☐ Circuit Civil - Not Applicable
  - ☐ Constitutional challenge-statute or ordinance
  - ☐ Constitutional challenge-proposed amendment
  - ☐ Corporate Trusts
  - ☐ Discrimination-employment or other
  - ☐ Insurance claims
  - ☐ Intellectual property
  - ☐ Libel/Slander
  - ☐ Shareholder derivative action
  - ☐ Securities litigation
  - ☐ Trade secrets
  - ☐ Trust litigation

*** FILED: BROWARD COUNTY, FL BRENDA D. FORMAN, CLERK 10/27/2017 5:58:01 PM.****

# EXHIBIT 1(C)

IN THE CIRCUIT COURT OF THE
SEVENTEENTH JUDICIAL CIRCUIT IN
AND FOR BROWARD COUNTY,
FLORIDA

CIRCUIT CIVIL DIVISION

CASE NO.:

JANE PATTERSON, JOYCE PILLITERINI,
DORIS GREEN, DAVID MALBERG,
MARYFAITH BLANCHARD, ANGELO
BENCIVENGA, DONNA ALFORD,
RICHARD KINARD,

                Plaintiffs,

vs.

MERCK & CO., INC., a foreign corporation,
MERCK SHARPE & DOHME CORP., a
foreign corporation; and McKESSON CORP.,
a foreign corporation,

                Defendants.

_____/

## COMPLAINT FOR DAMAGES

Plaintiffs, by and through their attorneys, MARC J. BERN & PARTNERS LLP, complain

and allege against Defendants MERCK & CO., INC., (hereinafter, "Merck"), MERCK SHARPE

& DOHME, CORP., and McKESSON CORP., and each of them (collectively, "Defendants"), on

information and belief, alleges as follows:

## INTRODUCTION

1.      Plaintiffs bring this action for personal injuries and damages suffered as a direct

and proximate result of being inoculated with the unreasonably dangerous vaccine, ZOSTAVAX,

intended for the prevention of shingles as manufactured by Defendants.

1

2.      The subject of the present matter is the ZOSTAVAX vaccine, intended for the prevention of herpes zoster; the shingles virus. At all times relevant to this action, Defendants developed, designed, set specifications for, licensed, manufactured, prepared, compounded, assembled, processed, sold, distributed and/or marketed the ZOSTAVAX vaccine to be administered to patients throughout the United States, including Florida.

3.      All named Plaintiffs' claims for damages relate to Defendants' design, manufacture, sale, testing, marketing, labeling, advertising, promotion, and/or distribution of the faulty ZOSTAVAX vaccine.

4.      The Defendants' vaccine that is the subject of this action reached and was administered to all Plaintiffs, by and through their physicians, medical facilities and pharmacies without substantial change in condition from the time they left Defendants' possession.

5.      Plaintiffs, their physicians, and their pharmacists used the ZOSTAVAX vaccine in the manner in which it was intended.

6.      Defendants are solely responsible for any alleged design, manufacture or information defect the ZOSTAVAX vaccine may contain.

7.      Defendants do not allege that any other person or entity is comparatively at fault for any alleged design, manufacture, or informational defect regarding its ZOSTAVAX vaccine.

**PARTIES**

8.      Plaintiff JANE PATTERSON at all times relevant to this action was and is a citizen of the State of Florida, residing at 714 Tantallon Court, New Smyrna Beach, Florida 32168. JANE PATTERSON was inoculated with Defendants' ZOSTAVAX vaccine on or about February 5, 2007 at the Little Drug Company, located in New Smyrna Beach, Florida, as recommended for routine adult health maintenance and for the prevention of shingles. The vaccine did not prevent

shingles as intended, but rather caused JANE PATTERSON to contract a persistent strain of herpes zoster. On or about April 2, 2017, JANE PATTERSON was treated by Dr. Samuel Rosati, M.D. at New Smyrna Beach Urgent Care for the onset of a severe vesicular rash accompanied by weakened immune symptoms, which was diagnosed as herpes zoster, or shingles. JANE PATTERSON has been prescribed Famiciclovir and Lidocaine for management of her painful symptoms. As a direct and proximate result of these malfunctions, Plaintiff JANE PATTERSON suffered painful injuries and damages, and required extensive medical care and treatment.  As a further proximate result, Plaintiff JANE PATTERSON has suffered and will continue to suffer significant medical expenses, and pain and suffering, and other damages.

9.      Plaintiff JOYCE PILLITTERI at all times relevant to this action was and is a citizen of the State of Florida, residing at 3114 Carrollton Court, The Villages, Florida 32162. JOYCE PILLITTERI was inoculated with Defendants' ZOSTAVAX vaccine on or about January 1, 2009 at The Villages Health System, LLC, located in The Villages, Florida, as recommended for routine adult health maintenance and for the prevention of shingles. The vaccine did not prevent shingles as intended, but rather caused JOYCE PILLITTERI to contract a persistent strain of herpes zoster. On or about February 16, 2017, JOYCE PILLITTERI was treated by Dr. Paul L. Daluga, M.D. at The Villages Health Care Center Mulberry, located in The Villages, Florida, for the onset of a severe vesicular rash accompanied by weakened immune symptoms, which was diagnosed as severe herpes zoster, or shingles. JOYCE PILLITTERI has been prescribed Prednisone and Valacyclovir for management of her persistent and painful symptoms. As a direct and proximate result of these malfunctions, Plaintiff JOYCE PILLITTERI suffered painful injuries and damages, and required extensive medical care and treatment.  As a further proximate result, Plaintiff JOYCE

PILLITTERI has suffered and will continue to suffer significant medical expenses, and pain and suffering, and other damages.

10.    Plaintiff DORIS GREEN at all times relevant to this action was and is a citizen of the State of Florida, residing at 4371 Deering Street, Marianna, Florida 32446. DORIS GREEN was inoculated with Defendants' ZOSTAVAX vaccine on or about August 4, 2015 at the CVS Pharmacy, located in Marianna, Florida, as recommended for routine adult health maintenance and for the prevention of shingles. The vaccine did not prevent shingles as intended, but rather caused DORIS GREEN to contract a persistent strain of herpes zoster. On or about December 29, 2015, DORIS GREEN was treated by Valdee Sheffield, M.D. at North Florida Family Healthcare, located in Marianna, Florida, for the onset of a severe vesicular rash accompanied by weakened immune symptoms, which was diagnosed as severe herpes zoster, or shingles. DORIS GREEN experienced a persistent and actively blistering outbreak of shingles for more than two months, which only began to conclude on or about February 16, 2016. DORIS GREEN has been prescribed Famvir for management of her persistent and painful symptoms. As a direct and proximate result of these malfunctions, Plaintiff DORIS GREEN suffered painful injuries and damages, and required extensive medical care and treatment. As a further proximate result, Plaintiff DORIS GREEN has suffered and will continue to suffer significant medical expenses, and pain and suffering, and other damages.

11.    Plaintiff DAVID MALBERG at all times relevant to this action was and is a citizen of the State of Florida, residing at 2755 Wilsky Road, Land O Lakes, Florida 34639. DAVID MALBERG was inoculated with Defendants' ZOSTAVAX vaccine on or about December 4, 2012 at the Walgreens Pharmacy, located in New Port Richie, Florida, as recommended for routine adult health maintenance and for the prevention of shingles. The vaccine did not prevent shingles as

intended, but rather caused DAVID MALBERG to contract a persistent strain of herpes zoster. On or about April 26, 2016, DAVID MALBERG was treated by Jennifer Stanley, O.D., for the onset of a severe vesicular rash accompanied by weakened immune symptoms, which was diagnosed as severe herpes zoster, or shingles. On or about September 13, 2016, DAVID MALBERG received subsequent treatment for new and ongoing symptoms, at which time an examination revealed a herpetic infection of his eye, also known as keratoconjuntivitis, an ocular condition secondary to shingles.  DAVID MALBERG has been prescribed antihistamine drops and an eyepatch for management of his persistent and painful symptoms. As a direct and proximate result of these malfunctions, Plaintiff DAVID MALBERG suffered painful injuries and damages, and required extensive medical care and treatment.  As a further proximate result, Plaintiff DAVID MALBERG has suffered and will continue to suffer significant medical expenses, and pain and suffering, and other damages.

12.    Plaintiff MARYFAITH BLANCHARD at all times relevant to this action was and is a citizen of the State of Florida, residing at 1901 Hoyos Court, The Villages, Florida, 32159. MARYFAITH BLANCHARD was inoculated with Defendants' ZOSTAVAX vaccine on or about November 2, 2007 at the Family Care Center at The Villages, located in The Villages, Florida, as recommended for routine adult health maintenance and for the prevention of shingles. The vaccine did not prevent shingles as intended, but rather caused MARYFAITH BLANCHARD to contract a persistent strain of herpes zoster. On or about October 8, 2009, MARYFAITH BLANCHARD was treated by Dr. Alain B. Smolarski, M.D. at Family Care Center at the Villages, located in The Villages, Florida, for the onset of a severe vesicular rash accompanied by weakened immune symptoms, which was diagnosed as severe herpes zoster, or shingles. MARYFAITH BLANCHARD has been prescribed Famvir and Lipoderm patches for management of her

persistent and painful symptoms. As a direct and proximate result of these malfunctions, Plaintiff MARYFAITH BLANCHARD suffered painful injuries and damages, and required extensive medical care and treatment. As a further proximate result, Plaintiff MARYFAITH BLANCHARD has suffered and will continue to suffer significant medical expenses, and pain and suffering, and other damages.

13.     Plaintiff ANGELO BENCIVENGA at all times relevant to this action was and is a citizen of the State of Florida, residing at 1853 Bough Avenue, Unit A, Clearwater, Florida, 33760. ANGELO BENCIVENGA was inoculated with Defendants' ZOSTAVAX vaccine on or about August 4, 2015 at the Walgreens Pharmacy located in Largo, Florida, as recommended for routine adult health maintenance and for the prevention of shingles. The vaccine did not prevent shingles as intended, but rather caused ANGELO BENCIVENGA to contract a persistent strain of herpes zoster. On or about November 28, 2016, ANGELO BENCIVENGA was treated by John Kagay, M.D. at Diagnostic Clinic Medical Group - Largo, located in Largo, Florida, for the onset of a severe vesicular rash accompanied by weakened immune symptoms, which was diagnosed as severe herpes zoster, or shingles. ANGELO BENCIVENGA has been prescribed Valtrex, Calamine lotion, and Hydrocortisone cream for management of his persistent and painful symptoms. As a direct and proximate result of these malfunctions, Plaintiff ANGELO BENCIVENGA suffered painful injuries and damages, and required extensive medical care and treatment. As a further proximate result, Plaintiff ANGELO BENCIVENGA has suffered and will continue to suffer significant medical expenses, and pain and suffering, and other damages.

14.     Plaintiff DONNA ALFORD at all times relevant to this action was and is a citizen of the State of Florida, residing at 11761 West Minnesota Avenue, Deland, Florida 32720. DONNA ALFORD was inoculated with Defendants' ZOSTAVAX vaccine on or about August

11, 2014 at the Walgreens Pharmacy, located in Deland, Florida, as recommended for routine adult health maintenance and for the prevention of shingles. The vaccine did not prevent shingles as intended, but rather caused DONNA ALFORD to contract a persistent strain of herpes zoster and neurological complications. On or about September 13, 2016, DONNA ALFORD was treated by Dr. Annath Krishnan, M.D., at his practice located in Deland, Florida, for the onset of a severe vesicular rash accompanied by weakened immune symptoms, which was diagnosed as severe herpes zoster, or shingles. On or about October 3, 2016, DONNA ALFORD was treated again by Dr. Annath Krishnan, M.D. for ongoing and uncontrolled pain, and worsening herpes zoster outbreaks. On or about March 29, 2017, DONNA ALFORD received subsequent treatment from Dr. Annath Krishnan, M.D. for worsening symptoms and extreme discomfort, which was then diagnosed as post-herpetic nervous system involvement and post-herpetic neuralgia, which are chronic conditions of residual pain and nerve damage caused secondary to zoster infections. On or about April 24, 2017, DONNA ALFORD was treated by the same medical team for uncontrolled and increasing post-herpetic pain. On or about May 23, 2017, DONNA ALFORD received subsequent treatment from the same medical team for post-herpetic neuralgia with increasing nervous system involvement. On or about June 23, 2017, DONNA ALFORD sought subsequent treatment for her post-herpetic neuralgia, at which time she was diagnosed with chronic pain syndrome. DONNA ALFORD continues to experience uncontrolled symptoms and excruciating daily pain, which has not been successfully eased or resolved by medication or pain management therapies. DONNA ALFORD has been prescribed Zorivax, Percocet, Fentanyl patches, Duragestic patches and Oxycodone for management of her persistent and painful symptoms. As a direct and proximate result of these malfunctions, Plaintiff DONNA ALFORD suffered painful injuries and damages, and required extensive medical care and treatment.   As a further proximate result,

Plaintiff DONNA ALFORD has suffered and will continue to suffer significant medical expenses, and pain and suffering, and other damages.

15.      Plaintiff RICHARD KINARD at all times relevant to this action was and is a citizen of the State of Florida, residing at 175 Rotunda Boulevard East, Placida, Florida 33947. RICHARD KINARD was inoculated with Defendants' ZOSTAVAX vaccine on or about April 12, 2011, administered by Dr. Richard Kayne, M.D. in Cheshire, Connecticut, as recommended for routine adult health maintenance and for the prevention of shingles. The vaccine did not prevent shingles as intended, but rather caused RICHARD KINARD to contract a persistent zoster keratitis and other eye disorders. On or about November 23, 2011, RICHARD KINARD was treated by Cervantes Lorenzo, M.D. at Opti-Care Eye Health Center, located in Waterbury, Connecticut, for eye problems, which were diagnosed as zoster keratitis, a painful ocular disorder involving vision interference due to the herpes zoster virus infecting the eye. On or about November 25, 2011, RICHARD KINARD sought subsequent treatment from Cervantes Lorenzo, M.D. at Opti-Care Eye Health Center for ongoing and worsening symptoms of keratitis.  On or about October 23, 2014, RICHARD KINARD sought subsequent medical treatment from Dr. Thomas L. Schwartz, M.D. at Eye Care Associates of Sarasota, located in Sarasota, Florida, for ongoing and worsening symptoms, at which time the diagnosis of progressive disciform keratitis was affirmed. On or about June 22, 2015, RICHARD KINARD was treated again by Dr. Thomas L. Schwartz, M.D. at Eye Care Associates of Florida or new and worsening symptoms, where new herpes infections were observed in the left eye. Between the dates of November 10, 2015 and February 8, 2017, RICHARD KINARD underwent continuous observation and treatment by Dr. Thomas Schwartz for complications of the viral condition in his eyes. RICHARD KINARD has been prescribed Medrol, Acyclovir, Vigamox, Doxycycline-Monohydrate, tea tree oil, Refresh Plus drops and

8

Prednisone for management of his persistent and painful symptoms. As a direct and proximate result of these malfunctions, Plaintiff RICHARD KINARD suffered painful injuries and damages, and required extensive medical care and treatment.  As a further proximate result, Plaintiff RICHARD KINARD has suffered and will continue to suffer significant medical expenses, and pain and suffering, and other damages.

16.     At all relevant times to this action, as further detailed herein, Defendants MERCK & CO., MERCK SHARPE & DOHME, AND McKESSON CORP., were engaged in the business of researching, developing, testing, designing, setting specifications for, licensing, manufacturing, preparing, compounding, assembling, packaging, processing, labeling, marketing, promoting, distributing, selling and/or introducing into interstate commerce and into the State of Florida, either directly or indirectly through third parties or related entities, the ZOSTAVAX vaccine, which was to be administered to patients throughout the United States, including Florida.

17.     Defendant Merck & Co. ("Merck"), is a corporation organized and existing under the laws of the State of New Jersey with its principal place of business located at 2000 Galloping Hill Road, Kenilworth, New Jersey.  At all times relevant to this action, Merck researched, developed, tested, designed, set specifications for, licensed, manufactured, prepared, compounded, assembled, packaged, processed, labeled, marketed, promoted, distributed, and sold the ZOSTAVAX vaccine to be administered to patients throughout the United States, including Florida.  Merck has conducted business and derived substantial revenue from within the State of Florida, from including, but not limited to, its business activities related to the ZOSTAVAX vaccine. Defendant Merck had and continues to have substantial contacts with Florida, purposefully availed itself of the privilege of conducting activities and business within the State of Florida, derived substantial revenue from its contacts with the State of Florida, and its conduct

9

in Florida directly relates to Plaintiffs' claim in this action. Plaintiffs' claim arises out of Defendant Merck's contacts with the State of Florida.

18.    Defendant Merck Sharp & Dohme Corp., is a wholly-owned subsidiary of Defendant Merck and part of the Merck family of companies.  Merck Sharp & Dohme Corp. is a corporation organized and existing under the laws of the State of New Jersey with its headquarters located at 126 E. Lincoln Ave. Rahway, New Jersey.  At all times relevant to this action, through the actions of its wholly-owned subsidiary, Merck, or, based on information and belief, its own actions, Merck, developed, tested, designed, set specifications for, licensed, manufactured, prepared, compounded, assembled, packaged, processed, labeled, marketed, promoted, distributed, and/or sold the ZOSTAVAX vaccine to be administered to patients throughout the United States, including New Jersey. Defendant Merck Sharpe & Dohme Corp. had and continues to have substantial contacts with Florida, purposefully availed itself of the privilege of conducting activities and business within the State of Florida, derived substantial revenue from its contacts with the State of Florida, and its conduct in Florida directly relates to Plaintiffs' claim in this action. Plaintiffs' claim arises out of Defendant Merck Sharpe & Dohme Corp.'s contacts with the State of Florida.

19.    Defendant McKesson Corporation (hereinafter "McKesson") is a Delaware Corporation with its principal place of business at 2710 Gateway Oaks Boulevard, Sacramento, California. At all relevant rimes, McKesson was in the business of manufacturing, labeling, selling, marketing, packaging, re-packaging, and distributing the ZOSTAVAX vaccine, on information and belief, the ZOSTAVAX vaccine administered to the Plaintiffs. Defendant does business throughout the United States and in the State of Florida, and regularly, continuously, and presently does business with this State, including manufacturing, marketing, selling and distributing the

ZOSTAVAX vaccine. Defendant McKesson had and continues to have substantial contacts with Florida, purposefully availed itself of the privilege of conducting activities and business within the State of Florida, derived substantial revenue from its contacts with the State of Florida, and its conduct in Florida directly relates to Plaintiffs' claim in this action. Plaintiffs' claim arises out of Defendant McKesson's contacts with the State of Florida.

20.     Affiliates have provided Merck with support in the development and distribution of the ZOSTAVAX vaccine. McKesson acts as such affiliate and does regularly, and continuously conduct business throughout the State of Florida, including this County.

21.     Based upon information and belief, Merck, either directly or through its agents, servants and employees, does business in Florida, and at all times relevant hereto, has sold and distributed the ZOSTAVAX vaccine in Florida.

22.     Based on information and belief, Merck advertised its ZOSTAVAX vaccine to patients, doctors and hospitals in Florida and/or other medical facilities located throughout the state of Florida.

23.     Based on information and belief, Merck focused special attention and allocated special budgeting to the marketing of ZOSTAVAX in Florida because of the State's expansive population of elder residents in the target age demographic for the vaccine.

24.     Joinder of Plaintiffs in this Complaint for Damages is proper pursuant to Florida Rules of Civil Procedure, Rule 1.210(a), which allows permissive joinder, stating that "all persons having an interest in the subject of the action and obtaining the relief demand may join as plaintiffs." The Rule further states that "persona having a united interest may be joined on the same side as plaintiffs..."  In the present Complaint, all Plaintiffs' claims arise from a common nucleus of fact and joinder is not prejudicial and is conducive to efficiency of based on commonality.

Plaintiffs assert a right to relief in respect of or arising out of the same transaction, occurrence, or common nucleus, series of transactions or occurrences, and questions of law and fact common to all such Plaintiffs will arise in the action.

25.     Plaintiffs were influenced by, affected by, or otherwise caused to use and consent to being inoculated with the Defendants' ZOSTAVAX vaccine as a result of virtually uniform and/or identical information provided, as well as representations and material omissions made by Defendants Merck, Merck Sharpe & Dohme, and McKesson, as set forth herein.  This information emanated from the same source, Merck, and was vetted by its copy review department (or equivalent) to ensure uniformity and harmony of the marketing message.  The manner by which such information and representations were received by or otherwise exposed to Plaintiffs and their health care providers and pharmacies was the same and include, but are not limited to, the following:

    a.  The ZOSTAVAX vaccine applications submitted to and relied by the FDA for clearance to commercially market.

    b.  Product information, instructions for use and other labeling materials provided with the ZOSTAVAX vaccine.

    c.  Marketing and promotional materials made available and provided by Defendants' marketing departments to Plaintiffs' health care providers, including, but not limited to:

      i.  Patient brochures provided by Defendants' sales representatives in person,

      ii.  Training seminars hosted by Merck,

      iii.  CME (Continuing Medical Education) materials created, authored and/or provided by Defendants.

      iv.  Information supplied at Professional Conferences at booths hosted or manned by Merck or their Key Opinion Leaders.

    d.  Representations and informational packets made and provided by Defendants' marketing and sales departments through their sales representatives to each implanting physician of Plaintiffs' during in-office visits or meetings with said physicians and by pharmacists at the places where they go regularly to obtain other medications.

e.  Defendants' online websites that provided the same specific information on the ZOSTAVAX vaccine, including product description, indications for use, instructions for use, and ordering information.

f.  The indications for use were the same or substantially similar in each Plaintiff's situation, as set forth herein.  The Plaintiffs were each urged by their health care providers or pharmacists to get inoculated with the ZOSTAVAX vaccine for the prevention of adult shingles, which they were informed by said providers was a dangerous condition.

g.  Plaintiffs experienced injuries because of the same defects with the ZOSTAVAX, which were known or knowable to Defendants, at all relevant times, but negligently, recklessly, and intentionally withheld from Plaintiffs and their health care providers, as set forth herein.

## JURISDICTION AND VENUE

26.    This is an action for damages in excess of $15,000.00, excluding interest, costs, and attorneys' fees.

27.    This Court has personal jurisdiction over Plaintiffs, each as parties to this action and residents of the State of Florida.

28.    Venue is proper in this Court because venue is deemed proper in the Circuit Court in the county in which cause of action arose, or where any party to the action resides. The actions alleged herein took part in Florida. Further, a substantial amount of the Defendants' conduct, as alleged herein by Plaintiffs, took place throughout the State of Florida, including within Broward County.

29.    Requiring Defendants to litigate these claims in Florida does not offend traditional notions of fair play and substantial justice and is permitted by the United States Constitution.

30.    Moreover, each Defendant systematically availed themselves of the State of Florida by conducting regular and sustained business and engaging in substantial commerce and business activity in Florida, including without limitation researching, developing, designing, setting specifications for, licensing, manufacturing, preparing, compounding, assembling, processing,

13

marketing, promoting, distributing, selling, and/or introducing into interstate commerce in the State of Florida, either directly or indirectly, its products, including ZOSTAVAX vaccine. Defendants, and each of them, expected or should have expected that their acts would have consequences within the United States, specifically, in the State of Florida; Defendants, each of them, derived and, based on information and belief, some if not all continue to derive substantial revenue from their actions, dealings, associations, relationships, or otherwise, as described herein, in connection with the ZOSTAVAX vaccine.

31.     Each of the above-named Plaintiff's claims arise from and relate to Defendants' purposeful avail of the State of Florida because resident Defendants' wrongful conduct in researching, developing, designing, setting specifications for, licensing, manufacturing, preparing, compounding, assembling, processing, marketing, promoting, distributing, selling, ZOSTAVAX vaccines took place, in whole or in part, in the State of Florida.  Therefore, the claims of Plaintiffs relate to and arise from Defendants' explicit contacts and purposeful avail of the State of Florida. Further and independently, McKesson Corporation consented to jurisdiction in the State of Florida by appointing an agent for service of process in this State and by conducting substantial systematic business in this State.

32.     The instant Complaint for Damages does not confer diversity jurisdiction upon the federal courts pursuant to 28 U.S.C. § 1332.  Likewise, federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 is not invoked by the instant Complaint, as it sets forth herein exclusively state law claims against the Defendants.  Nowhere do Plaintiffs plead, expressly or implicitly, any cause of action or request any remedy that arises under or is founded upon federal law, and any alleged federal rights or remedies are expressly disavowed.  The issues presented by Plaintiffs do not implicate substantial federal questions, do not turn on the necessary interpretation

of federal law, and do not affect the federal system as a whole. The assertion of federal jurisdiction over claims made herein would improperly disturb the congressionally approved balance of federal and state responsibilities.

**ALTER-EGO, VICARIOUS AND SUCCESSOR LIABILITY, AND PIERCING THE CORPORATE VEIL AS A RESULT OF THE RELATIONSHIPS BETWEEN MERCK, MERCK SHARPE & DOHME, AND McKESSON CORP.**

33.    Plaintiffs incorporate by reference all prior allegations.

34.    At all times herein mentioned, Defendants Merck, Merck Sharp & Dohme, and McKesson were agents, servants, partners, aiders and abettors, co-conspirators and/or joint venturers, and were all times operating and acting within the purpose and scope of said agency, service, employment, partnership, conspiracy and/or joint venture and rendered substantial assistance and encouragement to each other, knowing their collective conduct constituted a breach of duty owed to Plaintiffs.

35.    There exists and, at all times herein mentioned, a unity of interest in ownership between Defendants Merck and Merck Sharp & Dohme such that any individuality and separateness between them has ceased and these particular Defendants are alter egos. Adherence to the fiction of the separate existence of these particular Defendants as entities distinct from each other will permit an abuse of corporate privilege and would sanction a fraud and/or promote injustice.

36.    At all times herein mentioned, Merck, Merck Sharp & Dohme, and McKesson were engaged in the business of, or were successors in interest to, entities in the business of researching, designing, formulating, compounding, testing, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging, prescribing, and/or advertising for sale, and selling the ZOSTAVAX vaccine for use by Plaintiffs, their health care

providers, and pharmacists.  As such, each of these particular Defendants is individually, as well as jointly and severally, liable to Plaintiffs for their damages.

37.     At all times herein mentioned, the officers and/or directors of Merck and Merck Sharp & Dohme mentioned or referred to herein participated in, authorized and/or directed the production and promotion of the aforementioned ZOSTAVAX vaccine when they knew, or with exercise of reasonable care and diligence should have known, of the hazards and dangerous propensities of said products, and thereby actively participated in the tortious conduct that results in the injuries suffered by Plaintiffs.

38.     Plaintiffs, would not have an adequate remedy if Defendants Merck Sharp & Dohme and McKesson were not named parties in this action.

39.     Defendant Merck Sharp & Dohme and McKesson exercised, and continues to exercise, complete and domination of the finances, policy, and business practices of Defendant Merck to such an extent that Defendants Merck, Sharpe & Dohme and McKesson have no separate minds, wills or existences of its own.

40.     The aforesaid control was used by Defendant Merck to negligently research, design, formulate, compound, test, manufacture, produce, process, assemble, inspect, distribute, market, label, promote, package, prescribe, and/or advertise, and sell ZOSTAVAX vaccine for use by patients like Plaintiffs, their health care providers, and their pharmacists.

41.     As such, there are sufficient grounds, in and of themselves, for disregarding the corporate form and extending liability to Defendants Merck Sharp & Dohme and McKesson through piercing the corporate veil.

42.     Based on the foregoing, "Merck" where used hereinafter, shall refer to all subsidiaries, affiliates, divisions, franchises, partners, joint venturers, organizational units of any

16

kind, predecessors, successors, assigns, officers, directors, employees, agents and representatives of Merck, and Merck Sharp & Dohme, and each of them.

43.     "Defendants" where used hereinafter, shall refer to all subsidiaries, affiliates, divisions, franchises, partners, joint venturers, organizational units of any kind, predecessors, successors, assigns, officers, directors, employees, agents and representatives of Merck, Merck Sharp & Dohme, and McKesson and DOES 1 through 50, and each of them.

## ESTOPPEL FROM PLEADING STATUTES OF LIMITATIONS OR REPOSE

44.     Plaintiffs incorporate by reference all prior allegations.

45.     Plaintiffs are within the applicable statute of limitations for their claims because Plaintiffs, and their health care professionals, did not discover, and could not reasonably discover, the defects and unreasonably dangerous condition of the ZOSTAVAX vaccine.

46.     Plaintiffs' ignorance of the defective and unreasonably dangerous nature of the ZOSTAVAX vaccine and the causal connection between these defects and each Plaintiffs' injuries and damages, is due in large part to Defendants' acts and omissions in fraudulently concealing information from the public and misrepresenting and/or downplaying the serious threat to public safety its products present.

47.     In addition, Defendants are estopped from relying on any statutes of limitation or repose by virtue of unclean hands, acts of fraudulent concealment, affirmative misrepresentations and omissions.

48.     Such conduct includes intentional concealment from Plaintiffs, prescribing health care professionals, pharmacists, and the general consuming public and the FDA of material information that ZOSTAVAX had not been demonstrated to be safe or effective, and carried with them the risks and dangerous defects described herein.

49.     Defendants had a duty to disclose the fact that the ZOSTAVAX vaccine was not safe or effective, was defective, unreasonably dangerous, and that being inoculated with the ZOSTAVAX vaccine as a measure of routine health maintenance and prevention carried the above-described risks.

## FACTUAL BACKGROUND

50.     The National Childhood Vaccine Injury Act of 1986 ("Vaccine Act"), 42 U.S.C. §§ 300aa-1 et seq. does not preempt Plaintiffs from filing this Complaint.

   a. Pursuant to §11(c)(1)(A) of the Vaccine Act, the Vaccine Court has jurisdiction to only hear cases listed on the Vaccine Injury Table.

   b. The ZOSTAVAX vaccine is not a vaccine listed in the Vaccine Injury Table. At all times hereinafter mentioned, Merck designed, manufactured, licensed, labeled, tested, distributed, marketed and sold the ZOSTAVAX vaccine.

51.     ZOSTAVAX was designed, developed, marketed, and sold with the intended purpose of preventing shingles, which is caused by the varicella zoster virus (VZV).

52.     Varicella zoster is a virus that causes chickenpox.

53.     Once the varicella zoster virus causes chickenpox, the virus remains inactive (dormant) in the nervous system for many years.

54.     VZV can be reactivated due to factors such as disease, stress, aging, and immune modulation caused by vaccination. The reactivated VZV infection of sensory nerve ganglion and the peripheral nerve and its branches persists latently in dorsal root ganglia. Such reactivation causes inflammation of nerve axons as well as vesicular eruptions on skin of involved dermatome.

55.     When reactivated, varicella zoster replicates in nerve cells and is carried down the nerve fibers to the area of skin served by the ganglion that harbored the dormant virus.

56.     In May of 2006, the U.S. Food and Drug Administration ("FDA") approved the ZOSTAVAX vaccine to be marketed and sold in the United States by Merck.

57.     ZOSTAVAX was initially indicated for the "the prevention of herpes zoster (shingles) in individuals 60 years of age and older when administered as a single-dose." FDA Approval Letter, May 25, 2006.

58.     FDA approval was based in large part on the results of the Shingles Prevention Study (SPS) supported by Merck.

59.     The results of the SPS were published in the *New England Journal of Medicine* on June 2, 2005. The paper was titled "A Vaccine to Prevent Herpes Zoster and Post-herpetic Neuralgia in Older Adults". *N. Engl. J. Med.* 2005; 352(22):2271-84.

    a.  Shingles results from reactivation of latent varicella zoster virus (VZV), which is the virus that causes chickenpox. The incidence and severity of shingles increases as people age.

    b.  As further described in this paper, "[t]he pain and discomfort associated with herpes zoster can be prolonged and disabling, diminishing the patient's quality of life and ability to function to a degree comparable to that in diseases such as congestive heart failure, myocardial infarction, diabetes mellitus type 2, and major depression." *N. Engl. J.Med.* 2005; 352(22) at 2272.

    c.  The ZOSTAVAX vaccine is essentially the same vaccine as that used for chickenpox, except significantly stronger.

    d.  ZOSTAVAX contains live VZV. The virulence of the virus is reduced or "attenuated." Attenuated vaccines are designed to activate the immune system with the decreased risk of actually developing the disease.

    e.  ZOSTAVAX is developed from a live attenuated version of the Oka/Merck VZV vaccine strain.

    f.  One of the paper's more significant findings was "[t]he greater number of early cases of herpes zoster in the placebo group, as compared with the vaccine group, and the fact that no vaccine virus DNA was detected, indicate that the vaccine did not cause or induce herpes zoster."

60.     A risk of using a live virus vaccine is that it is not weakened enough or "under-attenuated".

61.     Under-attenuated live virus creates an increased risk of developing the disease the vaccine was to prevent.

62.    Under-attenuated live VZV has been shown to reactivate. Leggiadro, R. J. (2000).
"Varicella Vaccination: Evidence for Frequent Reactivation of the Vaccine Strain in Healthy
Children." *The Pediatric Infectious Disease Journal*, 19(11), 1117–1118; Krause, P. R., &
Klinman, D. M. (2000). *Nature Medicine*, 6(4), 451–454.

63.    Once injected, attenuated live virus has been shown to recombine into more virulent
strains causing disease.

64.    Shingles is a reactivation of the latent VZV, that afflicts in nearly 1 million cases
annually in the United States, at an occurrence of three to seven times higher incidence in geriatric
patients.

65.    The approval granted by the FDA to allow the selling and marketing of this vaccine
came with certain post-marketing commitments that Merck agreed to complete, among other
things, to insure the safety of this vaccine.  These included the following:

    a.    A randomized, placebo-controlled safety study to assess the rates of
serious adverse events in 6,000 people receiving the vaccine as
compared to 6,000 who receive a placebo.

    b.    An observational study using a health maintenance organization (HMO)
and 20,000 vaccinated people to address safety issues in the course of
clinical practice. This study is specifically to detect "potential safety
signals following administration of ZOSTAVAX." This study was to be
submitted to the FDA by December 2008.

66.    Since the publication of the SPS in the *New England Journal of Medicine*, there
have been questions raised regarding the safety of ZOSTAVAX vaccine in scientific and medical
journals.

67.    ZOSTAVAX is a stronger, more potent version of Merck's chickenpox vaccine,
Varivax.

68.    Varivax contains a minimum of 1,350 PFU (plaque-forming units) of the virus
while ZOSTAVAX contains a minimum of 19,400 PFU.

20

69.     In the clinical studies evaluating ZOSTAVAX, more than 90% of the vaccinated subjects received 32,300 PFU.

70.     MERCK added several adverse reactions to its package insert/prescribing information since Varivax was approved.

    a.  The biological system in which the most adverse reactions were added was the nervous system.

    b.  Added reactions include: encephalitis, cerebrovascular accident, transverse myelitis, Guillain-Barré syndrome, Bell's palsy, ataxia, non-febrile seizures, aseptic meningitis, dizziness, and paresthesia.

    c.  Acute Disseminated Encephalomyelitis is a type of encephalitis.

71.     As of July 2012, the patient information sheet, label, and prescribing information distributed with the ZOSTAVAX vaccine contain no clear reference to the potential risk of viral infection.

72.     Individuals with compromised immune systems should not receive a live virus vaccine because those individuals can develop the disease that the vaccine is designed to prevent.

73.     Instances of zoster virus activation occurs at a rate that is twenty times higher in immunocompromised patients. Immunocompromised patients encompass a wide spectrum of health conditions ranging from HIV, lymphoma and other cancers, bone marrow transplant recipients, or patients in remission or otherwise who had recently been treated with chemotherapy or prednisone. For those who may be immunocompromised, the shingles will have atypical manifestations that are attributable to more severe skin legions, increased severity of pain and more diffuse involvement.

74.     At all times relevant hereto, the patient information sheet, as well as the label and prescribing information for ZOSTAVAX, did not adequately, if at all, address the risk of viral infection. All that was addressed was the concern that a rash and itching might develop at the

injection site. This was despite the fact that shingles was a noted occurrence during clinical trials of the vaccine.

75.    The prescribing information for ZOSTAVAX contains a warning that "[t]ransmission of vaccine virus may occur between vaccines and susceptible contacts."

     a.   The risk of transmission of vaccine virus is due to active viral infection in individuals receiving the ZOSTAVAX vaccine.

76.    Being inoculated with the zoster vaccine too closely to the pneumococcal vaccine ("P23') is known to reduce the immune system's response to the zoster vaccine. Additionally, the CDC states that live-virus attenuated vaccines should not be administered within four weeks of each other. Commonly administered live-vaccines include: Measles, Mumps and Rubella vaccine (MMR); Rotavirus vaccine; Vaccina vaccine; and the Influenza Vaccine ("Flumist:) are all in the category of potential interactions with the ZOSTAVAX vaccine. Receiving any two of these vaccines too closely together can decrease the efficacy of the zoster vaccine. While the prescribing information furnished by Merck mentions decreased efficacy with the pneumococcal vaccine, as of the present, the patient information sheet, label, and prescribing information distributed with the ZOSTAVAX vaccine does not adequately, if at all, address the potential risk of interactions between ZOSTAVAX and other common vaccinations, such as the Flumist influenza vaccination.

77.    At all times relevant hereto, the patient information sheet, as well as the label and prescribing information for ZOSTAVAX, did not adequately, if at all, address the risk of viral infection or possible diseases of the nervous system. This was despite the fact that Varivax, a less potent vaccine, had added several neurological diseases and symptoms as adverse reactions to the Varivax vaccine.

78.     Since ZOSTAVAX's introduction in 2006, Vaccine Adverse Event Reports ("VAERS") appeared in significant numbers addressing various adverse effects, including, but not limited to, viral infection resulting in disease of the central nervous system, including acute disseminated encephalomyelitis.

79.     Documented adverse reactions to vaccines must be reported to the federal government in a compulsory and mandated database, the Vaccine Adverse Event Reporting System ("VAERS".) As of September 2015, there had been 1,111 submissions received of serious adverse event reports regarding the Zoster vaccine, including 36 deaths. These reports included depicting recurrent instances of: myalgia; arthralgia; lymphadenopathy; rash; actinic keratosis; severe cutaneous disease; peripheral neuropathy; cellulitis; herpes keratis resulting in vision loss; facial paralysis; pneumonia; brain inflammation (encephalitis); and death.

80.     Other than post-herpetic neuralgia, shingles can lead to other serious complications, such as scarring, bacterial superinfection, allodynia, cranial and motor neuron palsies, pneumonia, encephalitis, visual impairment, hearing loss, and death.

81.     Since the live vaccine ZOSTAVAX was a mere amplification of the virus already disseminated, patented and widely distributed in Defendants' Varivax (Chickenpox) vaccine, it was likely more cost effective to mass product this duplicative vaccine, rather than to allocate resources and funding to the testing and FDA clearance of a non-live vaccine alternative.

82.     MERCK has knowledge that a non-live vaccine was an effective and medically preferential way to prevent shingles, but it maximized Defendants' profits to pursue a less safe, live-attenuated vaccine with the strain of the virus already cleared for market (in Varivax) and to abandon prior patents and/or research on non-live or inactivated alternative designs.

23

83. The Center for Disease Control and Prevention ("CDC") published that the ZOSTAVAX vaccine wanes in efficacy within five years, having almost no remaining preventative effects after seven years. This allegation is not included on any labeling or packaging literature to alert users of decreased efficacy of the vaccine with time.

84. The instructions and information published by Merck regarding the ZOSTAVAX vaccine indicate that only one inoculation is recommended. There is no booster vaccine or recommendation to re-vaccine. Patients who received the ZOSTAVAX vaccine do so with the intention to have long-term protection from herpes zoster, although even upon perfect use, the efficacy of the vaccine will decrease significantly after four years (according to the CDC.)

85. Additionally, unlike ZOSTAVAX, protein-based vaccine alternatives are safe and effective even in immunocompromised patients. Non-live vaccines carry no risk of reactivation inducing shingles after inoculation. Unlike ZOSTAVAX, non-live and inactivated vaccines also maintain efficacy, with 88% lower risk to develop shingles after four years than ZOSTAVAX, which diminishes in efficacy steadily with time.

86. MERCK knew, or should have known, that the pharmaceutical efficacy and overall safety and overall safety and benefit of a non-live, inactivated, or protein-based vaccine was a safer alternative to the ZOSTAVAX vaccine. The existence of safer alternatives for shingles preventative care, which is widely known to the scientific community, has been tested in clinical trials alongside ZOSTAVAX comparing the efficacy amongst the vaccines, and has shown that such dangers of ZOSTAVAX were known and discoverable, as was a safer and more effective alternative design. MERCK cannot claim that the risks or alternatives were "scientifically undiscoverable" in the context of a state-of-the-art defense.

87.     It follows that given the increased risk of viral infection due to vaccination, such complications are also possible complications of ZOSTAVAX. It also follows that post-vaccination viral infection can cause significant issues in the nervous system due to the replication of the latent virus in the nervous system.

88.     Despite this information and the potential correlation between being administered the ZOSTAVAX vaccine and developing an infection within a relatively short period of time, leading to the development of shingles or varicella-zoster virus pneumonia, Merck failed to properly address and provide this information both to patients and the medical providers prescribing the vaccine.

89.     As a direct result of the vaccine, Plaintiffs suffered, are suffering and/or will continue to suffer from mental and emotional distress due to resulting physical limitations and seriousness of their condition.

90.     As a result of the manufacture, marketing, advertising, promotion, distribution and/or sale of ZOSTAVAX, Plaintiffs sustained severe and permanent personal injuries. Further, as a tragic consequence of Merck's wrongful conduct, Plaintiffs suffered serious, progressive, permanent, and incurable injuries, as well as significant conscious pain and suffering, mental anguish, emotional distress, loss of enjoyment of life, physical impairment and injury.

91.     Plaintiffs have incurred and will continue to incur medical expenses and other economic harm as a direct result of use of ZOSTAVAX.

## COUNT I:
## STRICT PRODUCTS LIABILITY – DEFECTIVE DESIGN

92.     Plaintiffs incorporate by reference all prior allegations.

93.     At all relevant times, as set forth, *supra*, Defendants, and each of them, engaged in the business of researching, developing, testing, designing, setting specifications for, licensing,

manufacturing, preparing, compounding, assembling, packaging, processing, labeling, marketing, promoting, distributing, selling and/or introducing into interstate commerce the ZOSTAVAX vaccine, and, through that conduct, have knowingly and intentionally placed the ZOSTAVAX vaccine into the stream of commerce with full knowledge that they reach consumers such as Plaintiffs who would become administered the vaccine.

94.     Merck had a duty to exercise reasonable care in the design, research, manufacture, marketing, testing, advertisement, supply, promotion, packaging, sale, and distribution of ZOSTAVAX including the duty to take all reasonable steps necessary to manufacture and sell a product that was not defective and unreasonably dangerous to consumers and users of the product.

95.     Merck failed to exercise reasonable care in the design, formulation, manufacture, sale, testing, quality assurance, quality control, labeling, marketing, promotions, and distribution of ZOSTAVAX because Merck knew, or should have known, that its product caused viral infection, and was therefore not safe for administration to consumers.

Merck failed to exercise due care in the labeling of ZOSTAVAX and failed to issue to consumers and/or their healthcare providers adequate warnings as to the risk of serious bodily injury, including viral infection, resulting from its use. Merck failed to exercise due care in the labeling of ZOSTAVAX and failed to issue to consumers and/or their healthcare providers adequate warnings as to the risk of serious bodily injury, including viral infection, resulting from its use.

96.     Merck failed to exercise reasonable care in the design, formulation, manufacture, sale, testing, quality assurance, quality control, labeling, marketing, promotions, and distribution of ZOSTAVAX because Merck knew, or should have known, that its product caused viral infection, and was therefore not safe for administration to consumers.

97.     Merck continued to manufacture and market its product despite the knowledge, whether direct or ascertained with reasonable care, that ZOSTAVAX posed a serious risk of bodily harm to consumers. This is especially true given its tenuous efficacy.

98.     Merck knew, or should have known, that consumers, such as the Plaintiff, would foreseeably suffer injury as a result of Merck's failure to exercise ordinary care.

99.     As a direct and proximate consequence of Merck's negligence, Plaintiffs sustained serious personal injuries and related losses including, but not limited to, mental anguish, physical pain and suffering, diminished capacity for the enjoyment of life, a diminished quality of life, medical and related expenses, and other losses and damages.

**COUNT II:**
**STRICT PRODUCTS LIABILITY: FAILURE TO WARN**

100.    Plaintiffs incorporate by reference all prior allegations.

101.    Merck designed, researched, developed, manufactured, tested, labeled, advertised, promoted, marketed, sold, supplied, and/or distributed the ZOSTAVAX vaccine.

102.    The ZOSTAVAX vaccine was expected to, and did, reach the intended consumers, handlers, and persons coming in contact with the product with no substantial change in the condition in which the product was designed, produced, manufactured, sold, distributed, labeled, and marketed by Merck.

103.    The ZOSTAVAX vaccine was manufactured, designed, marketed, labeled and sold in a defective condition, for use by the Plaintiff's physicians and/or healthcare providers and all other consumers of the product, making the product unreasonably dangerous.

104.    Merck researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and otherwise released into the stream of commerce its ZOSTAVAX vaccine and in the course of same, directly advertised or marketed the product to

27

consumers or persons responsible for consumers, and therefore had a duty to warn of the risks associated with the use of its product

105.    Merck's ZOSTAVAX vaccine, as designed, researched, developed, manufactured, tested, advertised, promoted, marketed, sold, labeled, and distributed by Merck, was defective due to the product's inadequate warnings and instructions. Merck knew, or should have known, and adequately warned that its product created a risk of serious and dangerous side effects, including but not limited to, viral infection, resulting in shingles, post-herpetic neuralgia, or other diseases of the nervous system.

106.    The product was under the exclusive control of Merck and was unaccompanied by appropriate and adequate warnings regarding the risk of severe and permanent injuries associated with its use, including, but not limited to, the risk of developing a disease in the nervous system due to viral infection. The warnings given did not accurately reflect the risk, incidence, symptoms, scope or severity of such injuries to the consumer.

107.    Notwithstanding Merck's knowledge of the defective condition of its product, Merck failed to adequately warn the medical community and consumers of the product, including the Plaintiffs and their healthcare providers, of the dangers and risk of harm associated with the use and administration of its ZOSTAVAX vaccine.

108.    If the Plaintiffs were equipped with the knowledge of the defective condition and potential harms of the ZOSTAVAX vaccine, they would not have purchased it and agreed to have it injected into their body.

109.    Merck downplayed the serious and dangerous side effects of its product to encourage sales of the product; consequently, Merck placed its profits above its customers' safety.

110.    The product was defective when it left the possession of Merck in that it contained insufficient warnings to alert the Plaintiffs and/or their healthcare providers to the dangerous risks and reactions associated with it, including possible viral infection of the nervous system or another disease of the nervous system.

111.    Even though Merck knew or should have known of the risks and reactions associated with their product, it still failed to provide warnings that accurately reflected the signs, symptoms, incident, scope, or severity of the risks associated with the product.

112.    Regulation of the Federal Food, Drug and Cosmetic Act, 21 U.S.C.S. 301 to 399 ("FDCA") requires labels to be revised as soon as there is reasonable evidence of an association of a serious hazard with a drug; thus, a causal relationship need not be proved when revisions to warning labels have been made.

113.    On or about March 17, 2017, Merck requested FDA approval and regulatory action to issue a clinical efficacy supplement regarding a change in method of production of ZOSTAVAX.

114.    Since May 25, 2006, Merck has requested and received approval on thirteen separate occasions to amend, supplement, revise and otherwise change the warning labels, package insert, efficacy data, intended use, and method of production of ZOSTAVAX. Each regulatory action required by or petitioned to the FDA is sufficient to overcome the rebuttable presumption that the warning labels of ZOSTAVAX are and were adequate.

115.    Plaintiffs used Merck's ZOSTAVAX vaccine as intended or in a reasonably foreseeable manner.

116.    Plaintiffs, each of them, were not informed of the risk of contracting persistent and chronic shingles, the very condition the vaccine was intended to prevent. Moreover Plaintiffs, each

of them, were not informed of the risk of contracting shingles, post-herpetic neuralgia, residual nerve pain and damage, or herpetic interference into the eyes, and vision loss.   Given the knowledge of such risk, Plaintiffs would not have voluntarily become inoculated with ZOSTAVAX.

117.   Merck, as a manufacturer of pharmaceutical products, is held to the level of knowledge of an expert in the field and, further, Merck had knowledge of the dangerous risks and side effects of its product.

118.   Plaintiffs did not have the same knowledge as Merck and no adequate warning was communicated to her physicians and/or healthcare providers.

119.   Merck had a continuing duty to warn consumers of its ZOSTAVAX vaccine, including the Plaintiff, of the dangers associated with its product, and by negligently and/or wantonly failing to adequately warn of the dangers of the use of its product, Merck breached its duty.

120.   Although Merck knew, or should have known, of the defective nature of its ZOSTAVAX vaccine, it continued to design, manufacture, market, and sell its product without providing adequate warnings and instructions concerning the use of its product so as to maximize sales and profits at the expense of the public health and safety, in knowing, conscious, and deliberate disregard of the foreseeable harm caused by its ZOSTAVAX vaccine.

121.   As a direct and proximate result of Merck's failure to adequately warn or other acts and omissions of Merck described herein, Plaintiffs were caused to suffer severe and permanent injuries, pain, and mental anguish, including diminished enjoyment of life.

122.    Merck's failure to warn extended beyond the product's label and into other media available to Merck, including but not limited to advertisements, person-to-person sales calls, medical journal articles, and medical conference presentations.

123.    Upon information and belief, the ZOSTAVAX vaccine as manufactured and supplied by Merck, was further defective due to inadequate post-market warnings or instructions because after Merck knew, or should have known, of the risk of serious bodily harm from the administration of its ZOSTAVAX vaccine, including, but not limited to, possible viral infection, Merck failed to provide adequate warnings to consumers and/or their healthcare providers about the product, knowing the product could cause serious injury.

124.    The ZOSTAVAX vaccine, upon information and belief, as manufactured and supplied by Merck, was defective due to inadequate post-market warnings or instructions when it left Merck's control.

125.    As a proximate result of Merck's acts and omissions and the Plaintiffs' use of Merck's defective product, Plaintiffs suffered serious physical injuries and incurred substantial medical costs and expenses as set forth in this Complaint, including, but not limited to, mental anguish, physical pain and suffering, diminished capacity for the enjoyment of life, a diminished quality of life, medical bills and other expenses, and other losses and damages.

## COUNT III:
## BREACH OF EXPRESS WARRANTY

126.    Plaintiffs incorporate by reference all prior allegations.

127.    Merck, through its officers, directors, agents, representatives, and written literature and packaging, and written and media advertisements, expressly warranted that its ZOSTAVAX vaccine was safe and effective and fit for use by consumers, was of merchantable quality, did not

31

create the risk of or produce dangerous side effects, including, but not limited to, viral infection, and was adequately tested and fit for its intended use.

    a.    Specifically, Merck stated that "ZOSTAVAX is a vaccine that is used for adults 60 years of age or older to prevent shingles (also known as zoster)."

    b.    Merck also stated that "ZOSTAVAX works by helping your immune system protect you from getting shingles."

    c.    Merck, in the SPS paper, stated that "…the vaccine did not cause or induce herpes zoster."

128.    At the time of making such express warranties, Merck knew and/or should have known that its ZOSTAVAX vaccine did not conform to the express warranties and representations and that, in fact, its product was not safe and had numerous serious side effects, including the possibility of viral infection, of which Merck had full knowledge and did not accurately or adequately warn.

129.    The ZOSTAVAX vaccine manufactured and sold by Merck did not conform to these representations because it caused serious injury, including diseases of the nervous system and/or viral infection, to consumers such as the Plaintiff, when used in routinely administered dosages.

130.    Merck breached its express warranties because its product was and is defective for its intended purpose.

131.    Plaintiffs, through their physicians and/or other healthcare providers, did rely on Merck's express warranties regarding the safety and efficacy of their product in purchasing and injecting the product.

132.    Members of the medical community, including physicians and other healthcare professionals, relied upon Merck's representations and express warranties in connection with the use recommendation, description, and dispensing of Merck's ZOSTAVAX vaccine.

133.   As a foreseeable, direct, and proximate result of the breach of the express warranties, the Plaintiffs suffered severe and permanent personal injuries, harm, and economic loss.

**COUNT IV:**
**BREACH OF IMPLIED WARRANTY**

134.   Plaintiffs incorporate by reference all prior allegations.

135.   At all times relevant to this action, Merck manufactured, compounded, portrayed, distributed, recommended, merchandised, advertised, promoted, and/or sold its ZOSTAVAX vaccine for use in preventing shingles.

136.   Merck knew of the intended use of its ZOSTAVAX vaccine at the time Merck marketed, sold, and distributed its product for use by the Plaintiffs physicians and healthcare providers, and impliedly warranted the product to be of merchantable quality and safe and fit for its intended use.

137.   Merck impliedly represented and warranted to the medical community, the regulatory agencies, and consumers, including the Plaintiffs, their physicians, and her healthcare providers, that ZOSTAVAX vaccine was safe and of merchantable quality and fit for the ordinary purpose for which the product was intended and marketed to be used.

138.   Merck's representations and implied warranties were false, misleading, and inaccurate because its product was defective, and not of merchantable quality.

139.   At the time Merck's product was promoted, marketed, distributed, and/or sold by Merck, Merck knew of the use for which it was intended and impliedly warranted its product to be of merchantable quality and safe and fit for such use.

140.   Plaintiffs, their physicians and healthcare providers, and members of the medical community reasonably relied on the superior skill and judgment of Merck, as manufacturer,

33

developer, distributor, and seller of the ZOSTAVAX vaccine, as to whether it was of merchantable quality and safe and fit for its intended use, and also relied on the implied warranty of merchantability and fitness for the particular use and purpose for which the product was manufactured and sold.

141.    Contrary to Merck's implied warranties, its product as used by the Plaintiffs, was not of merchantable quality and was not safe or fit for its intended use because the product was unreasonably dangerous as described herein.

142.    Merck breached its implied warranty because its product was not safely fit for its intended use and purpose.

143.    Merck placed its product into the stream of commerce in a defective, unsafe, and inherently dangerous condition, and the product was expected to and did reach the Plaintiffs without substantial change in the condition in which it was manufactured and sold.

144.    As a foreseeable, direct and proximate result of Merck's acts and omissions and Plaintiffs' use of Merck's defective product, Plaintiffs suffered serious physical injuries and incurred substantial medical costs and expenses to treat and care for their injuries described herein.

## COUNT V:
## FRAUDULENT MISREPRESENTATION

145.    Plaintiffs incorporate by reference all prior allegations.

146.    Merck, by and through its agents and employees will be added following discovery, intentionally, willfully, and knowingly, fraudulently misrepresented to the medical community, the FDA, and consumers, including the Plaintiffs and her health care providers, that its ZOSTAVAX vaccine had been adequately tested in clinical trials and was found to be safe and effective.

34

147.    Merck knew or believed at the time it made its fraudulent misrepresentations, that its misrepresentations were false and fraudulent regarding the dangers and risks associated with use of its ZOSTAVAX vaccine. Merck made its fraudulent misrepresentations intentionally, willfully, wantonly, and with reckless disregarded and depraved indifference for the safety and well-being of the users of their product, such Plaintiffs.

148.    Merck's fraudulent misrepresentations were made with the intent of defrauding and deceiving the medical community, the Plaintiffs, and the public, and also inducing the medical community, Plaintiffs, and the public, to recommend, prescribe, dispense, and purchase Merck's product.

149.    Merck's fraudulent misrepresentations intentionally concealed the following material information:

a.  Merck represented through its labeling, advertising, marketing material, advertisements, and packaging that ZOSTAVAX had been tested and was found to be safe and effective for preventing shingles;

b.  Merck represented that ZOSTAVAX did not cause or induce shingles;

c.  Merck knowingly omitted in the packaging for this product that the ZOSTAVAX vaccine can actually cause a viral infection, leading to an array of other infections and/or diseases;

d.  Merck represented that ZOSTAVAX was safe, when, indeed, it was not.

e.  Ann Redfield, MSN, RN, working with part of the "vaccine team" as part of Merck's Clinical Safety and Risk Management Department, wrote the comment section for Merck's WAES adverse experience reports.

f.  Ann Redfield also worked as the "process owner" of Merck's Varicella Zoster Vaccine Identification Program. In this capacity, Ann Redfield drafted documents presented to the Merck employees who interacted directly with healthcare providers who recommend, prescribe, and dispense ZOSTAVAX. In addition, Ann Redfield gave presentations to Merck's field personnel, which was the sales force of Merck employees who interacted directly with healthcare providers.

g.  Upon information and belief, on behalf of Merck, Ann Redfield acted within the scope of her employment when she excluded or otherwise ignored reports of meningitis caused by vaccine-strain herpes zoster and assisted Merck in communicating this false information to sales representatives and then

35

healthcare providers. In the alternative, based upon information and belief, Redfield acted beyond the scope of her employment when she misrepresented key safety information, such as excluding or otherwise ignoring reports of meningitis caused by vaccine-strain herpes zoster in her communications to Merck, who in turn communicated this false information to sales representatives and then health care providers.

150.    Merck and Defendants were under a duty to disclose to the Plaintiffs and their physicians and healthcare providers, the defective design and formulation of its product, which design and formulation heightened the risk of suffering the injuries, diseases, and maladies more specifically described in this Complaint.

151.    Merck had sole access to material facts concerning the defective nature of the product and its propensity to cause serious and dangerous injuries and damages to persons who used the product.

152.    The intentional concealment and omissions of material fact concerning the safety of the ZOSTAVAX vaccine was undertaken purposefully, willfully, wantonly, fraudulently by Defendants Merck, with intent to mislead, with reckless disregard for the health and safety of the Plaintiffs and to induce Plaintiffs' physicians and healthcare providers to purchase, prescribe, administer and/or dispense Merck's product; and to mislead Plaintiffs into reliance upon Merck's fraudulent misrepresentations to use Merck's product as a safe and effective vaccine.

153.    At the time Defendants made these misrepresentations, including Merck through its various officers, directors, agents, representatives, and employees, and at the times the Plaintiffs were administered Merck's product, Plaintiffs were unaware of Defendants' falsehoods, and reasonably believed them to be true.

154.    Defendants knew and had reason to know that the product was at great risk of causing serious personal injury to users of the product, and that the product was inherently dangerous in a manner that exceeded the inaccurate and inadequate warnings given by Merck.

155.    In reliance upon Defendants' false and fraudulent misrepresentations, through her physicians and healthcare providers, the Plaintiffs were induced to, and did, reasonably rely upon Defendants' misrepresentations regarding the safety and efficacy of Merck's product, thereby sustaining severe and permanent personal injuries and damages. Defendants knew and had reason to know that Plaintiffs, their physicians and healthcare providers, in using Merck's product, did not have the ability to determine the true facts intentionally concealed by Defendants, and would not have used the product if the true facts regarding the product had been known by Plaintiffs, their physicians, and their healthcare providers.

156.    As a result of Merck's research and testing or lack thereof, Merck willfully, wrongfully, and intentionally distributed false information including, but not limited to, assuring the Plaintiffs, the public, and Plaintiffs' healthcare providers and physicians, that Merck's product was safe for use. As a result of Merck's research and testing, or lack thereof, Merck intentionally omitted, concealed, and suppressed from the medical community, Plaintiffs, and other consumers the true results of Merck's studies and research, which revealed the true risks of serious harm associated with the use of the product.

157.    Merck had a duty when disseminating information to the public to provide truthful information, and a parallel duty not to deceive the public, the Plaintiffs, their healthcare providers and physicians, and the FDA.

158.    The information distributed by Merck to the public, including the Plaintiffs, the medical community, and the FDA, included, but was not limited to, reports, press releases, advertising campaigns, print advertisements, commercial media containing material representations, which were false and misleading, and contained omissions and concealment of the truth regarding the dangers of the use of Merck's product.

159.     Merck recklessly and/or intentionally falsely represented the dangerous and serious health and safety concerns inherent in the use of its product to the public at large, and the Plaintiffs in particular, for the purpose of influencing the sales of a product known by Merck to be dangerous and defective.

160.     Defendants' wrongful conduct constitutes fraud and deceit, and was committed and perpetrated willfully, wantonly, and purposefully.

161.     As a foreseeable, direct, and proximate result of Defendants' described acts and omissions, Plaintiffs were caused to suffer the serious and dangerous side effects as are more specifically described in this Complaint.

162.     As a direct and proximate consequence of Merck's fraudulent misrepresentations, Plaintiffs sustained serious personal injuries and related losses including mental anguish, physical pain and suffering, diminished capacity for the enjoyment of life, a diminished quality of life, diminished ability to work, medical and related expenses, and other losses and damages.

**COUNT VI:**
**NEGLIGENT MISREPRESENTATION**

163.     Plaintiffs incorporate by reference all prior allegations.

164.     Merck had a duty to accurately and truthfully represent to the medical community, the FDA, and U.S. consumers, including Plaintiffs, the truth regarding Merck's claims that Merck's product had been tested, and found to be safe and effective for its stated purposes. The misrepresentations made by Merck, in fact, were false and Merck was careless or negligent in ascertaining the truth of the representations at the time Merck made the misrepresentations.

165.     Merck represented and marketed ZOSTAVAX as being safe and effective.

38

166.    After Merck became aware of the risks of ZOSTAVAX, Merck failed to communicate to the Plaintiffs and other members of the general public, that the administration of this vaccine increased the risk of viral infection.

167.    Merck failed to exercise ordinary care in making representations concerning its product and its manufacture, sale, testing, quality assurance, quality control, and distribution in interstate commerce. Merck negligently and/or carelessly misrepresented and intentionally concealed the truth regarding the high risk of the product's unreasonable, dangerous and adverse side effects associated with the administration, use, and injection of the product.

168.    Merck breached its duty in representing to the Plaintiffs, their physicians and healthcare providers, and the medical community that Merck's product did not carry the risk of serious side effects such as those suffered by Plaintiffs and other similarly situated patients.

169.    Merck failed to warn the Plaintiffs and other consumers, of the defective condition of ZOSTAVAX, as manufactured and/or supplied by Merck.

170.    Merck negligently misrepresented material facts about ZOSTAVAX in that it made such misrepresentations when they knew or reasonably should have known of the falsity of such misrepresentations. Alternatively, Merck made such misrepresentations without exercising reasonable care to ascertain the accuracy of these representations.

171.    The above misrepresentations were made to Plaintiffs as well as the general public.

172.    Plaintiffs and their healthcare providers, pharmacists and physicians, justifiably relied on Merck's misrepresentations.

173.    Consequently, Plaintiffs' use of ZOSTAVAX was to their own detriment as Merck's negligent misrepresentations proximately caused plaintiff's injuries and monetary losses.

174.     As a foreseeable, direct, and proximate result of Merck's negligent and/or willful, intentional, and knowing misrepresentations as set forth herein, Merck knew, or had reason to know, that Merck's product had not been sufficiently tested, that the product lacked adequate, accurate, and prominent warnings, and that injection with the product created a high risk of adverse health effects, and higher than acceptable risks of harm to users, and higher than reported and represented risks of adverse side effects such as those specifically described herein.

175.     As a direct and proximate consequence of Merck's negligent misrepresentations, the Plaintiffs sustained serious personal injuries and related losses including mental anguish, physical pain and suffering, diminished capacity for the enjoyment of life, a diminished quality of life, diminished ability to work, medical and related expenses, and other losses and damages.

## COUNT VII:
## UNJUST ENRICHMENT

176.     Plaintiffs incorporate by reference all prior allegations.

177.     Merck is and at all times was the manufacturer, seller, and/or supplier of the shingles vaccine, ZOSTAVAX.

178.     Plaintiffs paid for Merck's product for the purpose of preventing shingles.

179.     Merck has accepted payment by Plaintiffs for the purchase of their product.

180.     Plaintiffs have not received the safe and effective vaccine for which they paid.

181.     It would be inequitable for Merck to keep this money if Plaintiffs did not in fact receive safe and effective treatment for the prevention of shingles.

## COUNT VIII:
## STRICT LIABILITY

Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

182.    Defendants manufactured, sold, distributed, marketed, and/or supplied ZOSTAVAX in a defective and unreasonably dangerous condition to consumers, including Plaintiffs, each of them.

183.    Defendants designed, manufactured, sold, distributed, supplied, marketed, and/or promoted ZOSTAVAX, which was expected to reach and did in fact reach consumers, including Plaintiffs, without substantial change in the condition in which it was manufactured and sold by Defendants.

184.    Plaintiffs used ZOSTAVAX as prescribed and in a manner normally intended, recommended, promoted, and marketed by Defendants.

185.    ZOSTAVAX failed to perform safely when used by ordinary consumers, including Plaintiff, including when it was used as intended and in a reasonably foreseeable manner.

186.    ZOSTAVAX was defective in its design and was unreasonably dangerous in that its unforeseeable risks exceeded the benefits associated with its design or formulation.

187.    ZOSTAVAX was defective in design or formulation in that it posed a greater likelihood of injury than other similar medications and was more dangerous than an ordinary consumer could reasonably foresee or anticipate.

188.    ZOSTAVAX was defective in its design and was unreasonably dangerous in that it neither bore nor was packaged with nor accompanied by warnings adequate to alert consumers, including Plaintiffs, of the risks described herein, including, but not limited to, the propensity to induce herpes zoster or shingles, post herpetic neuralgia, herpes zoster keratis, vision loss, residual chronic pain, and scarring.

189.    Although Defendants knew or should have known of the defective nature of ZOSTAVAX, it continued to design, manufacture, market, and sell ZOSTAVAX vaccines so as

41

to maximize sales and profits at the expense of the public health and safety. By so acting, Defendant acted with conscious and deliberate disregard of the foreseeable harm caused by ZOSTAVAX.

190.    Neither Plaintiffs nor their prescribing physicians could have, through the exercise of reasonable care, discovered ZOSTAVAX defects or perceived the extent of the dangers posed by the vaccine.

191.    As a direct and proximate consequence of Defendants' actions, omissions, and misrepresentations, Plaintiffs suffered severe shingles outbreaks, post herpetic neuralgia, herpes zoster keratis, vision loss and other painful impediments. In addition, Plaintiffs required and will continue to require healthcare and services and Plaintiffs have incurred and will continue to incur medical and related expenses as a result of their injuries. Plaintiffs also have suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages. Plaintiffs' direct medical losses and costs include care for hospitalization, physician care, monitoring, treatment, medications, and supplies. Plaintiffs have incurred and will continue to incur mental and physical pain and suffering.

193.    Defendants' conduct as described above was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiffs, thereby entitling Plaintiffs to punitive damages under common law and in accordance with N.J.S.A 2A: 58C-1, so as to punish Defendants and deter them from similar conduct in the future.

## COUNT IX:
## CONSUMER FRAUD

194.    Protection of Florida consumers is codified in the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). Commercial behavior that constitutes "unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce" is declared unlawful.

195.    In the present matter Merck engaged in continuous and pointed marketing activity and introduced the ZOSTAVAX vaccine heavily into the stream of commerce within Florida and to Florida consumers. Merck engaged in distribution and sales strategy within the state of Florida and intended to reach Florida consumers, including Plaintiffs.

196.    The aggressive marketing campaign, containing advertising techniques that evaded divulging the known serious risks and warnings to consumers, including Plaintiffs, was unconscionable commercial behavior and is impermissible under FDUTPA.

## COUNT X:
## PUNATIVE DAMAGES

197.    Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

194.    Defendant has been repeatedly admonished by the FDA about the manner in which it has marketed ZOSTAVAX to consumers and physicians.

195.    Defendants have repeatedly engaged in a pattern of conduct of deliberately avoiding FDA recommendations as to which warnings relating to public hazards should be included in materials. Defendants have engaged in other similar incidents with other drugs it sells and this evidence tends to show that overstating the benefits of a drug while minimizing the risk of the drug is a pattern and practice of Defendants, which continues even to the present time.

43

196.    Defendants' acts were willful and malicious in that Defendant's conduct was carried on with a conscious disregard for the safety and rights of Plaintiffs. Defendants' unconscionable conduct thereby warrants an assessment of exemplary and punitive damages against Defendants in an amount appropriate to punish Defendants, and deter similar conduct in the future.

196.    Punitive damages are appropriate under Florida law.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants, as follows:

a.    For general damages in an amount to be proven at the time of trial;

b.    For special damages in an amount to be proven at the time of trial;

c.    For statutory damages as set forth above, in an amount to be proven at the time of trial;

d.    For exemplary and punitive damages in an amount to be proven at the time of trial, and sufficient to punish Defendant or to deter Defendant and others from repeating the injurious conduct alleged herein;

e.    For pre-judgment and post-judgment interest on the above general and special damages;

f.    For costs of this suit and attorneys' fees; and

g.    All other relief that this Court deems necessary, proper, and just.

**WHEREFORE**, Plaintiffs demand judgment against Defendants, jointly, severally or in the alternative, for compensatory damages, punitive damages and costs of suit as provided by law.

Respectfully submitted,

MARC J. BERN & PARTNERS LLP
Attorneys for Plaintiffs

By: /s/ Carmen A. De Gisi
CARMEN A. De GISI, ESQ.
Florida Bar No: 97303
MARC J. BERN & PARTNERS LLP
Attorneys for Plaintiffs
101 W. Elm Street, Suite 215
Conshohocken, PA 19428
Tel: (610) 941-4444
Fax: (610) 941-9881
Primary E-Mail. cdegisi@bernllp.com

# EXHIBIT 1(D)

Filing # 63498619 E-Filed 10/30/2017 03:24:46 PM

## IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
## IN AND FOR BROWARD COUNTY, FLORIDA

JANE PATTERSON, *et al.*

**Plaintiff(s),**

      -vs-

MERCK & CO., INC., *et al.*

**Defendant(s).**

Case No.:_____

Division:_____

### SUMMONS

**THE STATE OF FLORIDA**
**TO EACH SHERIFF OF THE STATE:**

YOU ARE HEREBY COMMANDED to serve this summons and a copy of the complaint or petition in the above styled cause upon the defendant(s):

    MERCK & CO., INC., A FOREIGN CORPORATION
    c/o Division of Corporations
    PO Box 6327
    Tallahassee, FL 32314
    Attn: Service of Process

Each defendant is hereby required to serve written defenses to said complaint or petition on plaintiff or plaintiff's attorney, whose name and address is

    CARMEN A DE GISI, ESQUIRE
    MARC J BERN & PARTNERS LLP
    101 W. Elm Street, Suite 215
    Conshohocken, PA 19428

within 20 days after service of this summons upon that defendant exclusive of  the day of service, and to file the original of the defenses with the Clerk of this Court before service on plaintiff's attorney or immediately thereafter.  If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

WITNESS my hand and the seal of said Court on _____OCT 31 2017_____, _____.

                    Brenda D. Forman
                    Clerk of Circuit Court

By:_____



**BRENDA D. FORMAN**

Summons Form - Corporate

*** FILED: BROWARD COUNTY, FL  BRENDA D. FORMAN,  CLERK 10/31/2017 9:48:10 AM.****

# EXHIBIT 1(E)

## IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
## IN AND FOR BROWARD COUNTY, FLORIDA

JANE PATTERSON, *et al.*

**Plaintiff(s),**                                    Case No.:_____

            -vs-
                                                      Division:_____
MERCK & CO., INC., *et al.*

**Defendant(s).**            **SUMMONS**

**THE STATE OF FLORIDA**
**TO EACH SHERIFF OF THE STATE:**

YOU ARE HEREBY COMMANDED to serve this summons and a copy of the complaint or petition in the above styled cause upon the defendant(s):

        McKESSON CORP., A FOREIGN CORPORATION
        c/o CORPORATION SERVICE COMPANY
        1201 HAYS STREET
        TALLAHASSEE, FL 32301

Each defendant is hereby required to serve written defenses to said complaint or petition on plaintiff or plaintiff's attorney, whose name and address is

        CARMEN A DE GISI, ESQUIRE
        MARC J BERN & PARTNERS LLP
        101 W. Elm Street, Suite 215
        Conshohocken, PA 19428

within 20 days after service of this summons upon that defendant exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court before service on plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

WITNESS my hand and the seal of said Court on _____OCT 31 2017_____

                                            Brenda D. Forman
                                            Clerk of Circuit Court

                                    By:_____



                                            BRENDA D. FORMAN

Summons Form - Corporate

*** FILED: BROWARD COUNTY, FL BRENDA D. FORMAN, CLERK 10/31/2017 9:48:10 AM.****

# EXHIBIT 1(F)

Filing # 63498619 E-Filed 10/30/2017 03:24:46 PM

**IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT**
**IN AND FOR BROWARD COUNTY, FLORIDA**

JANE PATTERSON, *et al.*

    **Plaintiff(s),**
                                            Case No.:_____

        -vs-
                                            Division:_____

MERCK & CO., INC., *et al.*

    **Defendant(s).**

<u>**SUMMONS**</u>

**THE STATE OF FLORIDA**
**TO EACH SHERIFF OF THE STATE:**

YOU ARE HEREBY COMMANDED to serve this summons and a copy of the complaint or petition in the above styled cause upon the defendant(s):

    MERCK SHARPE & DOHME CORP, A FOREIGN CORPORATION
    c/o CT CORPORATION SYSTEM
    1200 S. PINE ISLAND ROAD
    PLANTATION, FL 33324

Each defendant is hereby required to serve written defenses to said complaint or petition on plaintiff or plaintiff's attorney, whose name and address is

    CARMEN A DE GISI, ESQUIRE
    MARC J BERN & PARTNERS LLP
    101 W. Elm Street, Suite 215
    Conshohocken, PA 19428

within 20 days after service of this summons upon that defendant exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court before service on plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

WITNESS my hand and the seal of said Court on _____ OCT 31 2017

                                          Brenda D. Forman
                                        Clerk of Circuit Court

                                      By:_____

**BRENDA D. FORMAN**

Summons Form - Corporate

# EXHIBIT 1(G)

## RETURN OF SERVICE

State of Florida                    County of Broward                    Circuit Court

Case Number: CACE-17-019806

Plaintiff:
**JANE PATTERSON, ET AL.**



KDY2017036116

vs.

Defendant:
**MERCK & CO., INC., ET AL.**

For:
CARMEN A DE GISI
MARC J BERN & PARTNERS LLP
60 E 42ND ST
SUITE 950
NEW YORK, NY 10165

Received by LG INVESTIGATIVE SERVICES LLC on the 31st day of October, 2017 at 5:06 pm to be served on **MERCK & CO., INC., A FOREIGN CORPORATION C/O DIVISION OF CORPORATIONS, 2661 EXECUTIVE CENTER CIRCLE, TALLAHASSEE, FL 32399.**

I, CHRISTOPHER KADY, do hereby affirm that on the **2nd day of November, 2017** at **2:35 pm**, I:

served a **CORPORATE, PARTNERSHIP, ASSOCIATION OR GOVERNMENT SERVICE** by delivering a true copy of the **SUMMONS and COMPLAINT** with the date and hour of service endorsed thereon by me, to: **MARGARET FREEMAN** as **SUPERVISOR** authorized to accept service, of the within named corporation, at the address of: **2661 EXECUTIVE CENTER CIRCLE, TALLAHASSEE, FL 32399** on behalf of **MERCK & CO., INC., A FOREIGN CORPORATION**, and informed said person of the contents therein, in compliance with state statutes.

**Description** of Person Served: Age: 47, Sex: F, Race/Skin Color: BLACK, Height: 5'6", Weight: 175, Hair: BROWN, Glasses: N

I certify that I am over the age of 18, have no interest in the above action, and am a Certified Process Server, in good standing, in the judicial circuit in which the process was served.               "Under penalties of perjury, I declare that I have read the foregoing document and that the facts in it are true" F.S. 92.525.  NOTARY NOT REQUIRED PURSUANT TO FS 92.525

_____

**CHRISTOPHER KADY**
Process Server 237

**LG INVESTIGATIVE SERVICES LLC**
**3235 N 36TH AVENUE**
**HOLLYWOOD, FL 33021**
**(954) 635-7724**

Our Job Serial Number: KDY-2017036116

Copyright © 1992-2017 Database Services, Inc. - Process Server's Toolbox V7.1i

Filing # 63498619 E-Filed 10/30/2017 03:24:46 PM

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

JANE PATTERSON, et al.

    Plaintiff(s),

       -vs-

MERCK & CO., INC., et al.

    Defendant(s).

Case No. *CACE-17-019806*

Division: _____

## SUMMONS

CK23767
NW 82?7
2.55 Pm

**THE STATE OF FLORIDA**
**TO EACH SHERIFF OF THE STATE:**

YOU ARE HEREBY COMMANDED to serve this summons and a copy of the complaint or petition in the above styled cause upon the defendant(s):

MERCK & CO., INC., A FOREIGN CORPORATION
c/o Division of Corporations
PO Box 6327
Tallahassee, FL 32314
Attn: Service of Process

C/O Secretary of State
2661 Executive Center Circle
Tallahassee, Florida 32399
Pursuant to Florida Statute § 48.*181*

Each defendant is hereby required to serve written defenses to said complaint or petition on plaintiff or plaintiff's attorney, whose name and address is

CARMEN A DE GISI, ESQUIRE
MARC J BERN & PARTNERS LLP
101 W. Elm Street, Suite 215
Conshohocken, PA 19428

within 20 days after service of this summons upon that defendant exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court before service on plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

WITNESS my hand and the seal of said Court on _____ OCT 31 2017 _____

Brenda D. Forman
Clerk of Circuit Court

By: _____

BRENDA D. FORMAN

Summons Form - Corporate

*** FILED: BROWARD COUNTY, FL BRENDA D. FORMAN, CLERK 10/31/2017 9:18:10 AM ***

# EXHIBIT 1(H)

## RETURN OF SERVICE

| | | |
|---|---|---|
| **State of Florida** | **County of Broward** | **Circuit Court** |

Case Number: CACE-17-019806

Plaintiff:
**JANE PATTERSON, ET AL.**



KDY2017036174

vs.

Defendant:
**MERCK & CO., INC., ET AL.**

For:
CARMEN A DE GISI
MARC J BERN & PARTNERS LLP
60 E 42ND ST
SUITE 950
NEW YORK, NY 10165

Received by LG INVESTIGATIVE SERVICES LLC on the 31st day of October, 2017 at 5:06 pm to be served on **MCKESSON CORP., A FOREIGN CORPORATION C/O CORPORATION SERVICE COMPANY, 1201 HAYS STREET, TALLAHASSEE, FL 32301**

I, CHRISTOPHER KADY, do hereby affirm that on the **2nd day of November, 2017** at **12:50 pm**, I:

served a **CORPORATE, PARTNERSHIP, ASSOCIATION OR GOVERNMENT SERVICE** by delivering a true copy of the **SUMMONS AND COMPLAINT** with the date and hour of service endorsed thereon by me, to: **GWEN BUTLER** as **CUSTOMER SERVICE SPECIALIST** authorized to accept service, of the within named corporation, at the address of: **1201 HAYS STREET, TALLAHASSEE, FL 32301** on behalf of **MCKESSON CORP., A FOREIGN CORPORATION**, and informed said person of the contents therein, in compliance with state statutes.

**Description** of Person Served: Age: 68, Sex: F, Race/Skin Color: WHITE, Height: 5'6", Weight: 180, Hair: GRAY, Glasses: Y

I certify that I am over the age of 18, have no interest in the above action, and am a Certified Process Server, in good standing, in the judicial circuit in which the process was served.                    "Under penalties of perjury, I declare that I have read the foregoing document and that the facts in it are true" F.S. 92.525.   NOTARY NOT REQUIRED PURSUANT TO FS 92.525

CHRISTOPHER KADY
Process Server 237

**LG INVESTIGATIVE SERVICES LLC**
**3235 N 36TH AVENUE**
**HOLLYWOOD, FL 33021**
**(954) 635-7724**

Our Job Serial Number: KDY-2017036174

Copyright © 1992-2017 Database Services, Inc. - Process Server's Toolbox V7.1i

Filing # 63498619 E-Filed 10/30/2017 03:24:46 PM



## IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
## IN AND FOR BROWARD COUNTY, FLORIDA

JANE PATTERSON, *et al.*

      **Plaintiff(s),**

        -vs-

MERCK & CO., INC., *et al.*

      **Defendant(s).**

Case No.: *CACE-17-019806*

Division: _____

### SUMMONS

**THE STATE OF FLORIDA**
**TO EACH SHERIFF OF THE STATE:**

YOU ARE HEREBY COMMANDED to serve this summons and a copy of the complaint or petition in the above styled cause upon the defendant(s):

    McKESSON CORP., A FOREIGN CORPORATION
    c/o CORPORATION SERVICE COMPANY
    1201 HAYS STREET
    TALLAHASSEE, FL 32301

Each defendant is hereby required to serve written defenses to said complaint or petition on plaintiff or plaintiff's attorney, whose name and address is

    CARMEN A DE GISI, ESQUIRE
    MARC J BERN & PARTNERS LLP
    101 W. Elm Street, Suite 215
    Conshohocken, PA 19428

within 20 days after service of this summons upon that defendant exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court before service on plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

WITNESS my hand and the seal of said Court on _____OCT 31 2017_____

                        Brenda D. Forman
                        Clerk of Circuit Court

                By: _____

                    **BRENDA D. FORMAN**

Summons Form - Corporate

*** FILED: BROWARD COUNTY, FL BRENDA D. FORMAN, CLERK 10/31/2017 9:48:10 AM.****

# EXHIBIT 1(I)

IN THE CIRCUIT/COUNTY COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

JANE PATTERSON, et al.
Plaintiff/Petitioner

v.

MERCK & CO., INC., et al.,
Defendant/Respondent

Case Number: CACE-17-019806

Documents to be Served: SUMMONS/CIVIL COVER SHEET/COMPLAINT

### VERIFIED RETURN OF SERVICE

LG Investigative Services LLC received the process on 10/31/2017 at 5:06 pm.
I Leonard J Gartman served the process on 11/01/2017 at 9:35 am at the following location:

1200 South Pine Island Road, Suite 250, Plantation FL. 33324 and served CT Corporation System as the Registered Agent. Donna Moch is the contact as the Senior Corporate Operations Manager.

_____ **INDIVIDUAL SERVICE** - Fla. Stat. §48.031(1)(a) - By delivering to the person named above a true copy of the process, with the date and hour of service endorsed thereon by me, along with a copy of the complaint, petition, or other initial court document.

_____ **SUBSTITUTE SERVICE** - By leaving a true copy of the process, with the date and hour of service endorsed thereon by me, along with a copy of the complaint, petition, or other initial pleading or court document, to the person named above as the:

_____ Co-Resident at the usual place of abode who is 15 years of age or older - Fla. Stat. §48.031(1)(a)
_____ Spouse as long as within county, spouse live together and spouse agrees to be served - Fla. Stat. §48.031(2)(a)
_____ Person in Charge - Fla. Stat. §48.031(2)(b) _____
_____ Partner of a partnership - Fla. Stat. §48.061(1)
_____ Person in Charge at Private Mailbox - Fla. Stat. §48.031(6)

__x__ **CORPORATE SERVICE** - By delivering a true copy of this process, with the date and hour of service endorsed thereon by me, along with a copy of the complaint, petition, or other initial pleading or court document to the person named above as the:

_____ Highest Ranking Officer - Fla. Stat. §48.081(5)
__x__ _____ Registered Agent of the within named corporation or employee of Registered Agent - Fla. Stat§48.081(3)(a) and §48.091
_____ Employee of the within named corporation at said corporation's place of business because service could not be made on the registered agent for failure to comply with F.S. 48.091. _____

Under penalties of perjury, I swear or affirm, pursuant to Fla. Stat. § 92.525 that I have read the foregoing and the facts stated there are true. I am over the age of 18, have no interest in the above action, and am a Certified Process Server in good standing in the county in which service was made.

| | |
|---|---|
| Leonard J Gartman | SPS 1365 Broward County /Florida     11/10/2017 |
| Printed Name of Certified Process Server | CPS or Other Number & county/state of license     Date |
| | |
| Signature of Certified Process Server | Carmen A De Gisi, Esquire |
| | For: Name of Attorney or Pro Se Litigant |

Filing # 63498619 E-Filed 10/30/2017 03:24:46 PM

*11-1-17*
*LSG*
*SPS #365*
*1365*
*935 AM*

**IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT**
**IN AND FOR BROWARD COUNTY, FLORIDA**

JANE PATTERSON, *et al.*

    **Plaintiff(s),**

Case No.: *CACE-17-019806*

      -vs-

Division:_____

MERCK & CO., INC., *et al.*

    **Defendant(s).**

## SUMMONS

**THE STATE OF FLORIDA**
**TO EACH SHERIFF OF THE STATE:**

YOU ARE HEREBY COMMANDED to serve this summons and a copy of the complaint or petition in the above styled cause upon the defendant(s):

    MERCK SHARPE & DOHME CORP, A FOREIGN CORPORATION
    c/o CT CORPORATION SYSTEM
    1200 S. PINE ISLAND ROAD
    PLANTATION, FL 33324

Each defendant is hereby required to serve written defenses to said complaint or petition on plaintiff or plaintiff's attorney, whose name and address is

    CARMEN A DE GISI, ESQUIRE
    MARC J BERN & PARTNERS LLP
    101 W. Elm Street, Suite 215
    Conshohocken, PA 19428

within 20 days after service of this summons upon that defendant exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court before service on plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

WITNESS my hand and the seal of said Court on _____ OCT 31 2017

                    Brenda D. Forman
                    Clerk of Circuit Court

By:_____

**BRENDA D. FORMAN**

Summons Form - Corporate

*** FILED: BROWARD COUNTY, FL BRENDA D. FORMAN, CLERK 10/31/2017 9:48:10 AM.****

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

JANE PATTERSON, JOYCE PILLITERINI,
DORIS GREEN, DAVID MALBERG,
MARYFAITH BLANCHARD, ANGELO
BENCIVENGA, DONNA ALFORD, and
RICHARD KINARD,

                Plaintiffs,

v.

MERCK & CO., INC., MERCK SHARP &
DOHME CORP., and McKESSON CORP.,

           Defendants.

Case No.: 17-019806

Division: 03

## NOTICE OF FILING OF NOTICE OF REMOVAL OF CIVIL ACTION

TO:    Clerk of the Circuit Court of Broward County, Florida

You are hereby notified that Defendants Merck & Co., Inc. and Merck Sharp & Dohme,

on the 20th of November, 2017, filed in the United States District Court for the Southern District

of Florida a Notice of Removal to Federal Court of the above-entitled cause, a copy of which is

attached hereto.  This Notice serves to effect full removal of this case pursuant to 28 U.S.C. §

1446(d), thereby precluding this state court from proceeding further in this case, unless and until

this case is remanded by the United States District Court for the Southern District of Florida.

Dated:  November 20, 2017

/s/ David J. Walz
Edward W. Gerecke
Florida Bar Number 328332
David J. Walz
Florida Bar Number 697273
CARLTON FIELDS JORDEN BURT, P.A.
Corporate Center Three at International Plaza
4221 W. Boy Scout Blvd., 10th Floor (33607)
P.O. Box 3239
Tampa, Florida 33601
Telephone: (813) 223-7000
Fax: (813) 229-4133

113354329.2

Email: egerecke@carltonfields.com
dwalz@carltonfields.com

*Attorneys for Defendants*
MERCK & CO., INC. and MERCK SHARP &
DOHME CORP.

## CERTIFICATE OF SERVICE

I hereby certify that, on November 20, 2017, I electronically filed the foregoing with the

Clerk of Court by using the Florida Courts E-Filing Portal, which will send an electronic notice

to the following:

Carmen A. De Gisi
Marc J. Bern & Partners LLP
101 W. Elm Street, Suite 215
Conshohocken, PA 19428
*Attorneys for Plaintiffs*

/s/ David J. Walz
Attorney

2

113354329.2